IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES STEWART, et al.
*Plaintiffs*,

v.

JAYCO, INC.
*Defendant*.

Civil Action No. ELH-16-3494

**MEMORANDUM OPINION**

Plaintiffs James Stewart and Kelly Goodman brought suit against defendant Jayco, Inc. ("Jayco") (ECF 2), alleging, *inter alia*, violations of the Magnuson-Moss Warranty Act, as amended, 15 U.S.C. §2301 *et seq*., and breach of warranty. The suit arises out of "non-stop problems" that plaintiffs claim to have had with their Jayco motorhome. *Id.* at 2-4. Plaintiffs appended several exhibits to the Complaint. *See* ECF 26-1 through ECF 26-3.[1]

Pursuant to Fed. R. Civ. P. 12(b)(2), Jayco has filed a motion to dismiss for lack of personal jurisdiction (ECF 16), supported by a memorandum of law. ECF 16-1 (collectively, the "Motion"). Plaintiffs oppose the Motion (ECF 19, "Opposition") and submitted several exhibits with their Opposition. ECF 19-2 through ECF 19-8. Defendant replied (ECF 20, "Reply") and also submitted an exhibit. ECF 20-1. Then, plaintiffs filed a "Motion to Allow Plaintiff [sic] to File Sur Response to Defendant's Reply" (ECF 22, "Motion for Surreply"), which defendant opposes. ECF 23. Plaintiffs subsequently docketed their proposed Surreply. ECF 24.[2]

---

[1] Suit was filed in the Circuit Court for Anne Arundel County. Jayco removed the case to this Court, pursuant to 28 U.S.C. §§ 1331 and 1332. ECF 1. Upon removal, the Complaint docketed with this Court did not include the exhibits referenced in the Complaint. *See* ECF 2. Therefore, by Order of December 21, 2016, I directed the parties to file the exhibits attached to the state court complaint. ECF 25. Those exhibits were submitted on December 23, 2016.

[2] The Motion for Surreply was filed without the proposed Surreply. ECF 22. Therefore,
(*continued . . .*)

The motions have been fully briefed and no hearing is necessary to resolve them.  *See* Local Rule 105.6.  For these reasons that follow, I shall grant plaintiffs' Motion for Surreply and defendant's Motion to Dismiss.

## I.   Factual Background

Plaintiffs are "residents" of Maryland.  ECF 2 ¶ 1.  Jayco is a "'final stage manufacturer' and distributor of recreational vehicles incorporated and headquartered in Indiana . . . ."  ECF 16-1 at 1; *see also* ECF 20-1 (Declaration of Craig Newcomer, Consumer Affairs Manager for "Jayco Motorhome Group"), ¶ 2.  Plaintiffs allege that Jayco does business in Maryland "through its three dealers in the State of Maryland."  *Id.* ¶ 2.[3]

On August 29, 2015, plaintiffs purchased a "2016 Jayco Seneca motor home" (the "Motorhome") from Camping World RV Super Center ("Camping World"), a dealer located in Fountain, Colorado.  ECF 2 ¶¶ 3, 5; *see* ECF 26-1 (Camping World Buyers Order and Invoice) at 1.  According to plaintiffs, Camping World is an "authorized agent and dealer of the Defendant." *See* ECF 2 ¶ 3.   Plaintiffs paid $153,081.90 for the Motorhome.  ECF 2 ¶ 4; *see* ECF 26-1 at 1.

Plaintiffs claim that the Motorhome has "been plagued by non-stop problems arising from defects in manufacturing of the vehicle."  *Id.* ¶ 5.  According to plaintiffs, "the vehicle is constantly and regularly having to be repaired with non-stop continuing problems."  *Id.* ¶ 8. They also assert: "The Plaintiffs have requested that the Defendant address the issues, but to no avail."  *Id.* ¶ 9.

---

(. . . *continued*)
my Chambers directed plaintiffs to file their proposed Surreply for review by opposing counsel and the Court.  Defendant filed its opposition to the Motion for Surreply on November 28, 2016 (ECF 23), before plaintiffs filed their proposed Surreply on November 29, 2016.  ECF 24.

[3] As discussed, *infra*, it appears that one Maryland dealer, which operates at three locations, sells Jayco products.

In its Motion, Jayco contends that this Court lacks personal jurisdiction over Jayco. In this regard, Jayco submitted the Declaration of Craig Newcomer, Consumer Affairs Manager of "Jayco Motorhome Group." *See* ECF 20-1. He avers that Jayco does not maintain an office in Maryland; does not have any employees in Maryland; does not own any real estate in Maryland; has no bank accounts in Maryland; and "does not directly advertise in Maryland." ECF 20-1 ¶¶ 4, 5, 7, 8, 9; *see also* ECF 16-1 at 1-2. Further, he states that although Jayco maintains a website accessible to residents of Maryland, by which they can "review product and warranty information and locate dealers, Jayco does not sell its vehicles on its website." ECF 20-1 ¶ 10. In the Motion, Jayco also asserts that it is not licensed to do business in Maryland and does not "directly" pay any taxes in Maryland. ECF 16-1 at 1-2.[4]

According to Newcomer, Jayco has dealers throughout the United States and in 15 other countries. ECF 20-1 ¶ 11. Newcomer avers that the "dealers are independently owned and operated." *Id.* Furthermore, Newcomer states, *id.*: "Neither Jayco nor any of Jayco's affiliates owns any part of them. Jayco does not control, supervise, or direct the day-to-day operations of the independently owned and operated dealers."

Additionally, Newcomer avers that "Maryland sales represent only a small percentage of Jayco's total motor home sales." *Id.* ¶ 12. Notably, he also asserts: "There is only one dealer in Maryland (Chesaco)", which has three locations in Maryland: Frederick, Joppa, and Gambrills.

---

[4] Maryland Code (2014 Repl. Vol., 2016 Supp.), §§ 7-202 and 7-203 of the Corporations and Associations Article, require foreign corporations either to register or to qualify with the Department of Assessments and Taxation ("SDAT"), in order to do business in the State. Although Newcomer's Declaration does not refer to Jayco's registration or qualification status, I take judicial notice that Jayco does not appear either to have registered or qualified with SDAT. *See* Department of Assessments and Taxation, Charter Record Search, *available at*: http://go.usa.gov/x9yDC; *see also White v. Lexington Court Apartments, LLC*, No. CV DKC 16-0427, 2016 WL 1558340, at *3 n.4 (D. Md. Apr. 18, 2016) ("The court may take judicial notice of information found on SDAT's website.").

*Id.*  Moreover, Newcomer states that Chesaco sells products of various manufacturers, and "is not an exclusive Jayco dealer."  *Id.*

Further, Newcomer points out that plaintiffs did not enter into a contract to purchase the Motorhome in Maryland or with Jayco.  *Id. ¶ 13.*  He avers, *id.*: "None of Jayco's employees communicated with Plaintiffs during Plaintiffs' negotiations leading up to their purchase of the motor home."  And, Newcomer states that after the purchase "the motor home [was] serviced by Camping World RV Sales in Hanover, Pennsylvania and Camping World RV Super Center in Fountain, Colorado."  *Id. ¶ 14.*  In addition, plaintiffs submitted their purchase agreement with Camping World, which provides: "Seller and Purchaser are the sole parties to this Order . . . ." ECF 26-1 at 2.

In their Opposition, plaintiffs point out that Jayco maintains a website with "a direct link to the Defendants [sic]."  ECF 19 ¶ 2.  They also claim that there are at least three "Jayco RV dealers operating within the State of Maryland."  *Id. ¶ 3.*  And, according to plaintiffs, the website directs customers to dealers operating within Maryland.  *Id. ¶¶ 2-3; see also* ECF 19-2 and ECF 19-3 (print-outs of Jayco website pages).  Thus, they maintain that Jayco is "transacting business in Maryland and contracting to supply manufactured products in Maryland by selling them to their dealers."  ECF 19 ¶ 12.  In their view, it is irrelevant that plaintiffs did not buy the Motorhome in Maryland.  *Id. ¶ 13.*

The exhibits submitted by plaintiffs from the Jayco website (ECF 19-3) identify one dealer, Chesaco RV.  They also show that Chesaco has three locations in Maryland.  ECF 19-4; ECF 19-6.

Additional facts are included in the Discussion.

## II.  Motion for Surreply

Local Rule 105.2(a) provides that a party is not permitted to file a surreply without permission of the court.  "Allowing a party to file a sur-reply is within the Court's discretion, *see* Local Rule 105.2(a), but they are generally disfavored." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g.*, *Chubb & Son v. C & C Complete Servs., LLC,* 919 F. Supp. 2d 666, 679 (D. Md. 2013).  A surreply may be permitted when the party opposing the underlying motion "would be unable to contest matters presented to the court for the first time in the [movant's] reply." *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted).  Conversely, a surreply is not permitted when the reply merely responds to an issue raised in the opposition to the underlying motion. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605–06 (D. Md. 2003).  In that posture, the party had the opportunity to support its arguments in the opposition to the underlying motion. *Id*. at 606.

In the Motion for Surreply, plaintiffs did not explain why a surreply is necessary or appropriate.  ECF 22.  Plaintiffs only requested the Court allow them to "file a brief one page response to the Defendant's Reply . . . ." *Id.*

In its opposition to the Motion for Surreply, defendant argues that the Court should not grant plaintiffs' request.  ECF 23.  According to defendant, "Jayco's Reply Brief did not raise any new legal arguments; nor do Plaintiffs assert that they were unable to respond to Jayco's arguments in their Brief in Opposition." *Id.* at 1.  Defendant argues: "To permit Plaintiffs to file a surreply under these circumstances would be prejudicial as it would leave Jayco without an opportunity to respond." *Id.* at 2.

In my view, plaintiff is entitled to file the Surreply because defendant introduced facts in its Reply that it had not previously cited.  For example, defendant argued for the first time that the relevant repairs were performed in Pennsylvania.  ECF 20 at 1, 3.  And, defendant submitted the "Declaration of Craig Newcomer."  *See* ECF 20-1.  Although Newcomer's averments are largely consistent with the allegations in the Motion, the Declaration constitutes evidence, to which plaintiffs have the right to respond.  Therefore, I shall grant the Motion for Surreply.

### III. Motion to Dismiss

### A.  Standard of Review

Defendant's motion to dismiss for lack of personal jurisdiction is predicated on Fed. R. Civ. P. 12(b)(2).  "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter."  *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016).   Under Rule 12(b)(2), the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014).

"If the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question."  *Combs*, 886 F.2d at 676.   A court may also, in its discretion, permit discovery as to the jurisdictional issue. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993).  Plaintiffs note that a plaintiff may develop facts supporting jurisdiction through discovery.  ECF 19 ¶ 14.  However, they have not asked the Court for any opportunity to conduct discovery.  *Id.*  In any event, neither discovery nor an evidentiary hearing is required to resolve a motion under Rule

12(b)(2).  *See generally* 5B C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1351 at 274–313 (3d ed. 2004, 2011 Supp.).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court."  *Grayson*, 816 F.3d at 268.  The district court may address the question of personal jurisdiction as a preliminary matter, ruling solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint.  *Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 276 (4th Cir. 2009); *see Grayson*, 816 F.3d at 268.  In that circumstance, the "plaintiff need only make 'a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge.'"  *Grayson*, 816 F.3d at 268 (quoting *Combs*, 886 F.2d at 676).

"When determining whether a plaintiff has made the requisite *prima facie* showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff."  *Grayson*, 816 F.3d at 268; *see Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  But, "district courts are not required . . . to look solely to the plaintiff's proof in drawing those inferences."  *Mylan Laboratories,* 2 F.3d at 62.  And, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'"  *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir. 2005) (emphasis in original) (citation omitted).

## B.  Discussion

## 1.

Fed. R. Civ. P. 4(k)(1)(A) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state in which the district court is located.  *Carefirst of Maryland*, 334 F.3d at 396.  Therefore, in Maryland, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."  *Id.*; *accord Carbone v. Deutsche Bank Nat'l Trust Co.*, No. CV RDB-15-1963, 2016 WL 4158354, at *5 (D. Md. Aug. 5, 2016).

Maryland's long-arm statute is codified at Md. Code (2013 Repl. Vol., 2016 Supp.), § 6–103(b) of the Courts & Judicial Proceedings Article.  It authorizes "personal jurisdiction over a person, who directly or by an agent," *id.:*

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals. *See Carbone*, 2016 WL 4158354 at *5; *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 135-36 (D. Md. 1981), *aff'd,* 758 F.2d 649 (4th Cir. 1985); *see also Mylan Laboratories*, 2 F.3d at 61.   The Maryland Court of Appeals has "consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution" and that the "statutory inquiry merges with [the] constitutional examination." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 22, 878 A.2d 567, 580 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)); *see also Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996) (stating that "the two inquiries essentially become one"); *accord ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

To be sure, "the reach of the [long-arm] statute is as far as due process permits . . . ." *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 140 n. 5, 892 A.2d 479, 492 n. 5 (2006).   However, the Maryland Court of Appeals has clarified that the statutory analysis remains a requirement of the personal jurisdiction analysis.   In *Mackey*, the Maryland Court of Appeals said, 391 Md. at 141 n. 6, 892 A.2d at 493 n. 6 (citations omitted):

> We stated recently in *Beyond v. Realtime* . . . that "the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." We did not, of course, mean by this that it is now permissible to simply dispense with analysis under the long-arm statute . . . . Rather . . . we interpret the long-arm statute to the limits permitted by the Due Process Clause when we can do so consistently with the canons of statutory construction.

Since *Mackey,* the Maryland Court of Appeals has repeatedly affirmed that "determining whether a Maryland court may exercise personal jurisdiction over a foreign defendant requires

a two-step analysis." *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *see also CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (stating that personal jurisdiction analysis "entails dual considerations").  First, the court considers "whether the requirements of Maryland's long-arm statute[] are satisfied." *CSR*, 411 Md. at 472, 983 A.2d at 501 (citing *Bond*, 391 Md. at 721, 895 A.2d at 999; *Mackey*, 391 Md. at 129, 892 A.2d at 486; *Beyond*, 388 Md. at 14, 878 A.2d at 576).  Second, it considers "whether the exercise of personal jurisdiction comports with the requirements imposed by the Due Process Clause of the Fourteenth Amendment.[]" *CSR*, 411 Md. at 473, 983 A.2d at 501 (citing *Bond*, 391 Md. at 721, 895 A.2d at 999; *Beyond*, 388 Md. at 15, 878 A.2d at 575).  Nevertheless, the Maryland Court of Appeals has, in some situations, declined to consider the first step where the analysis of the second step demonstrates conclusively that personal jurisdiction over the defendant would violate due process.  *See, e.g., Bond*, 391 Md. at 722, 895 A.2d at 1000.

Here, for the reasons stated below, I need not consider the statutory question under Maryland's long arm statute.  This is because the Court's exercise of personal jurisdiction over defendant flies in the face of due process.

**2.**

The United States Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Courts have separated this test into individual "prongs," first ascertaining whether the threshold of "minimum contacts" is met, and then considering whether the exercise

of jurisdiction on the basis of those contacts is "constitutionally reasonable." *ALS Scan*, 293 F.3d at 712.

Due process jurisprudence recognizes "two types of personal jurisdiction: general and specific." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n. 15 (4th Cir. 2009). The Fourth Circuit has explained*:*

> General personal jurisdiction, on the one hand, requires "continuous and systematic" contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred. Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.

*Id.* (citing, *inter alia, Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-15, (1984)) (internal citations omitted).

A court may exercise general jurisdiction over foreign corporations to hear "any and all claims" against the corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citations omitted). In contrast, specific jurisdiction "depends on an 'affiliatio[n]' between the forum and the underlying controversy. . . .'" *Id.* (citation omitted) (alteration in *Goodyear*).

I consider, in turn, whether due process permits the exercise of general or specific jurisdiction over defendant.

### 3.

As noted, general jurisdiction allows a plaintiff to bring "any and all claims" against a party in that jurisdiction. *Goodyear*, 564 U.S. at 919. "[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *ALS Scan*, 293 F.3d at 715 (internal quotation marks omitted); *accord Saudi v.*

*Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). The Fourth Circuit has long held that "broad constructions of general jurisdiction" are "generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993).

According to the Supreme Court, the "paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place . . . ." *Goodyear*, 564 U.S. at 924. In *Daimler AG v. Bauman,* ___ U.S. ___ , 134 S.Ct. 746, 760 (2014), the Supreme Court made clear that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." In particular, it noted that "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear*, 564 U.S. at 919) (alteration in original) (some quotation marks omitted).

In *Daimler*, the plaintiffs sought to exercise general jurisdiction over defendant *DaimlerChrysler Aktiengesellschaft* ("Daimler") in California to litigate a claim arising in Argentina, on the basis of Daimler's relationship to Mercedes-Benz USA ("MBUSA"). 134 S.Ct. at 750-51.[5] According to the Supreme Court, MBUSA was the "largest supplier of luxury vehicles to the California market." *Id.* at 752. The Court noted: "In particular, over 10% of all sales of new vehicles in the United States take place in California, and MBUSA's California sales account for 2.4% of Daimler's worldwide sales." *Id.* The Court determined that, even assuming that MBUSA's contacts were imputable to Daimler, there was no general jurisdiction over Daimler in California. *Id.* at 760. In reaching that conclusion, the Court observed that

---

[5] MBUSA was an "indirect subsidiary" of Daimler. *Daimler*, 134 S.Ct. at 752.

Daimler was neither incorporated in California nor did it maintain its principal place of business in California. *Id.* at 761. The Court stated, *id.* at 761-62:

> If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp.,* 471 U.S., at 472, 105 S.Ct. 2174 (internal quotation marks omitted).

Thus, the general jurisdiction analysis does not focus "solely on the magnitude of the defendant's in-state contacts." *Daimler*, 134 S. Ct. 746, 762 n.20 (internal quotations and citation omitted). The *Daimler* Court reasoned: "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* (citation omitted). Thus, it must be an "exceptional case" for general jurisdiction to be exerted over a corporation in a forum where that corporation is not incorporated and does not maintain its principal place of business. *Daimler*, 134 S.Ct. at 760 n.19.

The *Daimler* Court cited *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-48 (1952), as an "exceptional case," where it was appropriate to assert general jurisdiction over a company that was not incorporated in a state and did not maintain its principal place of business there. *See Daimler*, 134 S.Ct. at 756 n.8. In *Perkins*, the defendant was a Filipino mining company that had halted its operations during the Japanese occupation of the Philippines in World War II. 342 U.S. at 447. During that time, the president of the mining company returned to his home in Ohio, where he "did many things on behalf of the company." *Id.* at 448. Those

activities included, *inter alia*, keeping office files of the company; carrying on correspondence relating to the company and its employees; drawing and distributing salary checks; maintaining two active bank accounts with company funds; and holding directors' meetings. *Id.* The Court held that general jurisdiction was proper over the mining company in Ohio as to a cause of action that originated in the Philippines, as the president had "carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company. He there discharged his duties as president and general manager, both during the occupation of the company's properties by the Japanese and immediately thereafter." *Id.*

*Pitts v. Ford Motor Co.*, 127 F. Supp. 2d 676 (S.D. Miss. 2015), is also informative. In *Pitts*, plaintiffs, who were residents of Texas, asserted products liability claims against Ford in Mississippi. *Id.* at 680. According to plaintiffs, Ford " is qualified and registered to do business in the State of Mississippi, licensed to sell or distribute new automobiles in Mississippi, contracts with Mississippi based dealers, provides operational guidelines to Mississippi dealers, has purchased a Mississippi dealership, advertises in Mississippi, and has an agent for service of process in Mississippi." *Id.* at 683. Defendant stated, *inter alia*, that it "'does not sell new vehicles directly to the public'" but rather "sells its vehicles to 'independently-owned dealerships . . . .'" *Id.* at 680. Although the court assumed the truth of plaintiffs' facts, it concluded that Ford was not subject to general jurisdiction in Mississippi. *Id.* at 683. In reaching its conclusion, the *Pitts* Court noted that Ford is not incorporated in Mississippi and does not maintain its principal place of business in Mississippi. *Id.* According to the court, Ford was "at most 'doing business' in Mississippi", which is not sufficient to determine that Ford is essentially at home in the state. *Id.*

Many district courts around the country have reached the conclusion that no general jurisdiction exists over a defendant that is a national manufacturer where the defendant's primary contact with the state is the sale of products to in-state dealers. *See, e.g.*, *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 964 (N.D. Cal. 2015) (finding no general jurisdiction over Ford Motor Company in California despite the fact that 10.5% of new vehicles sold in the state were manufactured by Ford and that Ford maintained a research center in the State); *Estate of Rosario v. Falken Tire Corp.*, 109 F. Supp. 3d 485, 494 (D.P.R. 2015) (finding no general jurisdiction over a foreign tire manufacturer that sold tires in Puerto Rico through various dealers); *High Plains Const., Inc. v. Gay*, 831 F. Supp. 2d 1089, 1096 (S.D. Iowa 2011) (finding that dealer could not assert general jurisdiction over a wind turbine manufacturer where the manufacturer's contacts were limited to selling to the dealer).

Defendant argues that it is not subject to general jurisdiction in Maryland because it is not at home in the State. ECF 20 at 5. According to defendant, its "connections to Maryland are not 'continuous and systematic.'" *Id.* Citing Newcomer's Declaration (ECF 20-1), defendant points out: "Jayco is headquartered and maintains its principal place of business in Indiana, does not maintain an office in Maryland, does not own any real estate in Maryland, and [does] not have any employees in Maryland." ECF 20 at 5; *see* ECF 20-1 ¶¶ 4, 5, 8. Jayco also contends that it does not "directly advertise in Maryland to solicit customers in Maryland." ECF 20 at 5; *see* ECF 20-1 at ¶ 9. Moreover, defendant sells its products to a single Maryland dealer that has three locations, but is not exclusively a Jayco dealer. ECF 16-1 at 2. Defendant claims that "such contacts fall far short of the 'exceptional case' required by *Daimler*," 134 S.Ct. at 762 n. 19. ECF 20 at 5.

In their Opposition, plaintiffs did not specify whether they rely on general jurisdiction, specific jurisdiction, or both.  *See* ECF 19.  But, they seem to rely on the grounds of "minimum contacts."  *See id.* at 3.

Plaintiffs point to several contacts between Jayco and Maryland.  In particular, plaintiffs contend that Jayco sells its products to a Maryland dealer (ECF 19 ¶ 8) and observes that Jayco maintains a website accessible in Maryland, which directs customers to those dealers in Maryland.  *Id.* ¶¶ 2-6; *see* ECF 19-2 through ECF 19-8 (print-out copies of the Jayco and Chesaco websites).  According to plaintiffs, "the dealer's own website makes it clear that there are numerous new Jayco products available for sale at the Chesaco RV dealers/sellers in the state of Maryland."  ECF 19 at 2; *see* ECF 19-7 (printout of Chesaco website).  They assert: "[I]t seems highly inappropriate and suspect for the Defendant's [sic] to assert that they do not regularly do business in the state of Maryland, when clearly they place new vehicles at . . . three (3) locations of its solely named dealer."  ECF 19 at 2.  Plaintiffs conclude, *id.* at 3: "'[T]he Plaintiffs have already provided more than enough evidence that the Defendants [sic] have 'sufficient minimum contacts' for Maryland to exert personal jurisdiction over the Defendants and that they have clearly taken 'some acts by which they purposefully availed themselves of the privilege of conducting activities within the forum state.'"  (Citing *Hanson v. Denckla*, 357 U.S. 235 (1958)).

In my view, plaintiffs have not made a *prima facie* showing to establish general jurisdiction over defendant in Maryland.  Although plaintiffs point to some contacts that defendant maintains with Maryland, those contacts are not so continuous and systematic as to "render [defendant] essentially at home in the forum State."  *Goodyear*, 564 U.S. at 919.

Notably, Jayco is not incorporated in Maryland; it is not registered or qualified to do business in Maryland; it has no employees in Maryland; and it does not maintain an office here. And, as Newcomer averred, "Jayco products are sold by dealers throughout the United States and in 15 other countries."  ECF 20-1 ¶ 11.

To be sure, Jayco sells its products to a Maryland dealer, Chesaco, and Chesaco has three locations in Maryland.  But, Chesaco also sells other brands of recreational vehicles.  In addition, "Maryland sales represent only a small percentage of Jayco's total motor home sales."  ECF 20-1 ¶ 12.  Moreover, through its website, defendant passively directs customers in Maryland to purchase its products from Chesaco.  But, Chesaco is independently owned and operated, and defendant does not "control, supervise, or direct the day-to-day operations" of Chesaco.  ECF 20-1 ¶ 11.  Newcomer's unrefuted Declaration presents factual information sufficient to conclude that Jayco operates in many places, and that Maryland is not a hub or focus of activity for Jayco.

As the Supreme Court recognized in *Daimler*, a corporation cannot be considered "at home" when it "operates in many places" because it "can scarcely be deemed at home in all of them."  134 S. Ct. 746, 762 n.20.  Jayco's contacts with Maryland are not "so constant and pervasive as to render [Jayco] essentially at home in the forum State."  *Daimler AG*, 134 S.Ct. at 751 (internal quotations and citation omitted).  To be sure, the "[f]low of a manufacturer's products into the forum . . . may bolster an affiliation germane to *specific* jurisdiction. . . . But ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant."  *Goodyear*, 564 U.S. at 927.  I conclude that this Court lacks general jurisdiction over Jayco.

**4.**

Because Maryland lacks general personal jurisdiction over defendant, I next consider whether plaintiffs have made a *prima facie* showing of specific jurisdiction.

To determine whether there is specific jurisdiction over a defendant, courts consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs*, 561 F.3d at 278 (citing *ALS Scan,* 293 F.3d at 715); *accord Carefirst of Maryland*, 334 F.3d at 397.

The Supreme Court expounded on the minimum contacts requirement in *Burger King*, *supra*, 471 U.S. 462. There, a franchisor sued a franchisee in Florida, alleging, *inter* alia, breach of franchise obligations. *Id.*at 464-66. The defendants claimed the court lacked personal jurisdiction as to them. *Id.* at 469. In the context of specific jurisdiction, the Court explained that minimum contacts involve "significant activities within a State" or "'continuing obligations' between [the defendant] and residents of the forum." *Id.* at 475-76 (citations omitted). Notably, the "benchmark" is not the "foreseeability of causing *injury* in another State . . . ." *Id.* at 474 (emphasis in *Burger King*). Rather, it is "'foreseeability . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 295 (1980)).

The *Burger King* Court stated unequivocally that entering into a contract with a citizen of the forum state "*alone*" cannot "automatically establish minimum contacts" over a nonresident defendant. *Burger King*, 471 U.S. at 478 (emphasis in original). Conversely, the Court made

clear that "even a single act can support jurisdiction," so long as that act "creates a 'substantial connection' with the forum." *Id.* at 475 n.18 (citation omitted). The Court said: "Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there," jurisdiction cannot be "avoided merely because the defendant did not *physically* enter the forum State." *Id.* at 476 (emphasis in original). The *Burger King* Court also observed that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.* 15

Nevertheless, the Court said, *id.* at 474: "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (internal citations omitted); *see also Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013); *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012).

The first element, purposeful availment, "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs*, 561 F.3d at 278. A determination that the defendant has established minimum contacts with the forum state amounts to a conclusion that "'it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

In *Consulting Engineers*, 561 F.3d at 278, the Fourth Circuit enumerated several "nonexclusive factors," applicable in the "business context," which may help to "resolve whether a defendant has engaged in such purposeful availment":

- whether the defendant maintains offices or agents in the forum state;

- whether the defendant owns property in the forum state;

- whether the defendant reached into the forum state to solicit or initiate business;

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

- whether the parties contractually agreed that the law of the forum state would govern disputes;

- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

- the nature, quality and extent of the parties' communications about the business being transacted; and

- whether the performance of contractual duties was to occur within the forum.

(Internal citations omitted). The Court cautioned, however, that these factors are "not susceptible of mechanical application." *Id.*

Under the second prong of the test for specific jurisdiction, a defendant's contacts with the forum state must form the basis of the suit. *Consulting Eng'rs*, 561 F.3d at 278–79. As the Supreme Court reiterated in *Goodyear*, a corporation's "'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" 564 U.S. at 927 (quoting *International Shoe*, 326 U.S. at 318). And, in *Helicopteros*, *supra*, 466 U.S. at 415-16, the Supreme Court determined that, because the parties had conceded that the cause of action in the case did not arise out of the defendant's activity in the state, the only avenue for personal jurisdiction was general jurisdiction.

Finally, the third prong's constitutional reasonableness inquiry permits a defendant "who purposefully has directed his activities at forum residents" to defeat jurisdiction, if he can "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. "This prong of the analysis 'ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent.'" *Tire Engineering & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 303 (4th Cir. 2012) (quoting *CFA Inst.*, 551 F.3d at 296) (internal quotation marks omitted), *cert. denied*, ___ U.S. ___, 133 S.Ct. 846 (2013).

Defendant asserts: "Jayco has not 'purposefully availed' itself of the privilege of conducting activities in Maryland." ECF 16-1 at 6. According to defendant: "The fact that there are dealers in Maryland who non-exclusively sell Jayco products is too fortuitous and attenuated to establish general jurisdiction or specific jurisdiction." *Id.*

As stated, plaintiffs point to Jayco's contacts with Maryland through its relationship with a Maryland dealer, Chesaco, to which Jayco sells its products. *Id.* They also rely on Jayco's website, which directs potential customers to Chesaco. *Id.* Plaintiffs argue: "[T]he fact that the Plaintiffs in this case did not actually buy this product in Maryland is irrelevant. The Plaintiff [sic] resides in Maryland and therefore should be entitled to sue in Maryland." ECF 19 ¶ 13.

In Reply (ECF 20), Jayco observes that plaintiffs' claims "do not arise out of Jayco's alleged contacts with Maryland." *Id.* at 3. And, Jayco argues that plaintiffs' residence in Maryland "is insufficient to satisfy the minimum contacts test." *Id.* at 3. In particular, Jayco states, *id.*:

> With respect to the sale of the subject motor home to Plaintiffs, the contract was entered into between Plaintiffs and Camping World RV Super Center in

Colorado. (Exhibit A [ECF 20-1], Declaration of Craig Newcomer ¶ 13). There is
no purchase agreement between Jayco and Plaintiffs. (Decl. of Newcomer ¶13).
Jayco was not involved in the negotiations for the purchase of the motor home.
(Decl. of Newcomer ¶ 13). After purchase, any warranty repairs or services were
performed by Camping World RV Sales in Pennsylvania and Camping World RV
Super Center in Colorado. (Decl. of Newcomer ¶ 14).

In their Surreply, plaintiffs argue that absence of a purchase agreement between Jayco
and the plaintiffs is irrelevant because "[t]here is **never** any direct purchase agreement between
vehicle manufacturers and the ultimate buyer."   ECF 24 at 1 (emphasis in original).
Furthermore, plaintiffs state that they are able to present evidence indicating that Roger Johnson,
the Customer Service Manager for Jayco, "specifically instructed Plaintiffs to go to"
Pennsylvania for repairs.  *Id.* at 2.

Plaintiffs do not state where Johnson was located, nor do they indicate what means of
communication he used to instruct them to go to Pennsylvania for repairs.  *See id.*  Defendant
could have directed plaintiffs to a repair facility from anywhere in the world.  Nevertheless, it is
noteworthy that Jayco apparently never suggested repairs in Maryland, where the Motorhome is
located.  That supports an inference that Jayco does not have repair facilities in Maryland.

Even assuming, *arguendo*, that Jayco has some minimum contacts with Maryland, the
requirements for making a *prima facie* showing of specific jurisdiction over defendant are not
met here.  Notably, according to plaintiffs, the conduct of Jayco in Maryland is not the conduct
that gave rise to the cause of action.  *See, e.g.*, *Goodyear*, 564 U.S. at 927.  In particular,
plaintiffs purchased the Motorhome in Colorado, and they point to no conduct by Jayco that led
them to do so.

The District of Massachusetts's decision in *Killion v. Commonwealth Yachts*, 421 F.
Supp. 2d 246 (D. Mass. 2006), is informative.  In *Killion*, the plaintiff, a Massachusetts resident,
purchased a trawler boat at a boat show in Annapolis, Maryland.  The boat was manufactured by

Mainship Corporation ("Mainship"), a New Jersey corporation with places of business in Florida and Georgia. *Id.* at 249. Several years later, plaintiff brought suit in Massachusetts against Mainship and the dealer, claiming that the trawler was defective. *Id.* Mainship moved to dismiss for lack of personal jurisdiction. *Id.*

Plaintiff argued that several contacts connected Mainship with Massachusetts. These contacts included that Mainship sent a fax to him in Massachusetts, with information about the product; Mainship sold boats, at various times, through dealers in Massachusetts; one of Mainship's Massachusetts dealers gave plaintiff a "demo ride"; and a Mainship dealer in Maine specifically sold to Massachusetts customers and repaired boats for Massachusetts customers. *Id.* at 254-55.

The court determined that, notwithstanding those contacts, the court lacked personal jurisdiction over Mainship, because plaintiff did not allege that any of the contacts between Mainship and Massachusetts "gave rise to, or was directly related to, the contract with Mainship." *Id.* Based on the lack of detail in the complaint, the court also stated that it could not "assess whether it is reasonable to infer that [plaintiff's] demonstration ride was 'instrumental to the formation of the contract' with [the dealer], or that it was the 'cause in fact' and the 'legal cause' of the tort aspect of his case." *Id.* at 255.

Here, although plaintiffs contend that Jayco sells its products in Maryland to a single dealer with three locations in Maryland, plaintiffs did not purchase their Motorhome from or through that dealer. Nor do they allege that they used Jayco's website or that Jayco was in any way involved with plaintiffs' decision to purchase a Jayco Motorhome in Colorado. *See* ECF 2; EF 19; ECF 24; ECF 26-1. And, after plaintiffs bought the vehicle in Colorado, they had it

repaired in Pennsylvania.  As in *Killion*, plaintiffs have not alleged that any contacts between Jayco and the State of Maryland are related to, or give rise to, the cause of action.

Moreover, the fact that plaintiffs live in Maryland and claim that Jayco directed them to have their Motorhome serviced in Pennsylvania is irrelevant.  As stated in *Hanson*, 357 U.S. at 253, the unilateral activities of the plaintiffs do not constitute contacts sufficient to subject defendant to suit in this State.

In sum, although Jayco has some contacts with Maryland, plaintiffs have not alleged that those contacts form the basis for this suit.  *Consulting Eng'rs*, 561 F.3d at 278–79.  Accordingly, due process does not permit this Court to assert specific jurisdiction over defendant in this case.

## IV. Conclusion

I shall GRANT the Motion for Surreply.  And, in light of the foregoing, plaintiffs have failed to make a *prima facie* showing of either general or specific jurisdiction over defendant in Maryland.  Therefore, I shall GRANT the Motion to Dismiss.

An Order follows, consistent with this Memorandum Opinion.


Date:  January 18, 2017                                    _____/s/_____
                                                                          Ellen L. Hollander
                                                                          United States District Judge